IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KELLY LEE SWANSON,

    Plaintiff,

v.

COOS COUNTY; SHERIFF ANDREW
JACKSON; COQUILLE VALLEY
HOSPITAL; SHIRAZ FAROOQ, M.D.;
and DOES 1-50, inclusive,

    Defendants.

Civ. No. 08-6312-AA
OPINION AND ORDER

---

Steven M. McCarthy
Churchill Leonard Lawyers
PO Box 804
Salem, OR 97308
    Attorney for plaintiff

Gerald L. Warren
901 Capitol St. NE
Salem, OR 97301
    Attorney for defendants Coos County and Sheriff Jackson

Scott G. O'Donnell
Kevin M. Glynn
Keating Jones Hughes PC
One SW Columbia, Suite 800
Portland, OR 97258-2095
    Attorneys for defendants Coquille Valley Hospital and Shiraz
    Farooq, M.D.

1    - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Kelly Lee Swanson filed suit against defendants Coos County, Sheriff Andrew Jackson, Coquille Valley Hospital, Shiraz Farooq, M.D., and Does 1-50, asserting violations of his right against cruel and unusual punishment under the Eighth Amendment, Due Process violations, First Amendment retaliation, and professional negligence.[1] Plaintiff's claims arise from an incident that occurred when plaintiff became ill while he was a pretrial detainee in the Coos County Jail. Plaintiff alleges defendants Coos County and Sheriff Jackson ("the County defendants") acted with deliberate indifference to his medical needs in violation of the Eighth Amendment and retaliated against him after he complained of illness, in violation of his First Amendment rights. Plaintiff also alleges that defendants Coquille Valley Hospital ("the Hospital") and Dr. Farooq were negligent in the medical care they provided once he was transported to the Hospital, and that the surgeries conducted on plaintiff fell below the applicable standard of care.

All defendants now move for summary judgment.

---

[1] Plaintiff does not identify which claim attaches to each defendant. However, plaintiff does not allege facts to support any constitutional violations by the Hospital or Dr. Farooq, or any facts to support professional negligence by the County. I therefore analyze claims one through five as they apply to the County defendants, and claims six and seven with regard to the Hospital and Dr. Farooq.

## BACKGROUND

On April 19, 2007, plaintiff was booked and held in the Coos County Jail ("jail") as a pretrial detainee. At approximately 3:27 a.m. on April 25, 2007, plaintiff complained to Sgt. Deschenes of abdominal pain, vomiting, and hot and cold flashes. Deschenes did not observe evidence of vomiting, but he took plaintiff's pulse and blood pressure. According to Deschenes, neither reading indicated plaintiff's situation was life-threatening. Deschenes then contacted the jail's Medical Director, Dr. William Davis. Davis advised Deschenes to "keep and eye on" plaintiff in case the situation worsened, but otherwise plaintiff should wait to see the jail nurse later that morning.

At 4:25 a.m., plaintiff complained of increasing pain in his abdomen. Deschenes attempted to take plaintiff's blood pressure again but was unable to obtain a reading. Deschenes then called Dr. Davis and informed him that he was having plaintiff transported to a hospital.

Just before 5:00 a.m., Corrections Officer Cory Detzler transported plaintiff to the Hospital, located just a few blocks from the jail. Plaintiff arrived at the Hospital at approximately 5:00 a.m. By 5:10 a.m., he had been assessed by hospital staff. Warren Decl., Ex. 2. By 6:50 a.m., hospital

3   - OPINION AND ORDER

staff had explained plaintiff's preliminary diagnosis and plaintiff signed a consent form for abdominal surgery. Glynn Decl., Ex. 3. Plaintiff went into surgery with Dr. Farooq at 8:20 a.m. and was out by 9:15 a.m., after the successful removal of plaintiff's appendix. Glynn Decl., Ex. 4, p. 1.

On April 26, 2007, Dr. Farooq examined plaintiff and became concerned that plaintiff may have internal bleeding. Plaintiff was returned to surgery to repair a severed artery in his lower-left abdomen. Plaintiff fully recovered from the second surgery and was discharged from the Hospital on April 28, 2007. Plaintiff was not required to return to the jail after discharge.

About one year later, on April 30, 2008, the Hospital received plaintiff's formal tort claim notice.

On October 9, 2008, plaintiff filed this complaint.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the

4  - OPINION AND ORDER

evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630. However, the Ninth Circuit has refused to find a genuine issue of fact where the only evidence presented is "uncorroborated and self-serving" testimony. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).

## DISCUSSION

### A. Federal Due Process and Eighth Amendment Claims

In his Second and Fourth claims, plaintiff alleges he was subjected to cruel and unusual punishment in violation of the Eight Amendment and the Due Process Clauses of the Fifth and

5    - OPINION AND ORDER

Fourteenth Amendments. Because plaintiff was a pretrial detainee and had not been convicted of a crime at the time of his detention, his rights derive from due process as opposed to the Eighth Amendment's protection against cruel and unusual punishment. Bell v. Wolfish, 441 U.S. 520, 535-36, 99 S.Ct. 1861, 1872 (1979); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Nonetheless, the protection of pretrial detainees from "punishment" under the Due Process clause also protects them from "cruel and unusual punishment." Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Therefore, any formal distinction is irrelevant for the purposes of this analysis. "With regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes[.]" Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1187 (9th Cir. 2002).

Plaintiff argues that the County defendants acted with deliberate indifference to his serious medical needs and subjected him to cruel and unusual punishment by failing to provide treatment in a timely manner.

In order to prevail on an Eighth Amendment claim that medical treatment was denied or inadequately rendered, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to [his] serious medical needs." Estell v. Gamble, 429 U.S. 97, 106 (1976). However, "an inadvertent

6   - OPINION AND ORDER

failure to provide adequate medical care" does not allege a violation of the Eighth Amendment. Id. at 105; see also Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (negligence, or even gross negligence, is insufficient to state a claim under the Eighth Amendment). Rather, deliberate indifference requires a showing that the official "knows of and disregards an excessive risk to inmate health and safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also LeMarie v. Maase, 12 F.3d 1444, 1451 (9th Cir. 1993) (violation of the Eighth Amendment requires showing of culpable state of mind beyond mere negligence).

Prison officials act with deliberate indifference to a prisoner's serious medical needs if they delay, deny, or intentionally interfere with the prisoner's medical treatment. McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997); see also Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). To find deliberate indifference, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." McGuckin, 974 F.2d at 1060.

In this case, plaintiff claims that the County defendants failed to provide him with timely medical attention for his abdominal distress. In support of his claim, plaintiff argues

7    - OPINION AND ORDER

that the County defendants failed to enforce their own policies with regard to the First Aid training required of all corrections officers, and that this failure amounts to deliberate indifference. The County's policy requires all corrections officers to be trained in basic First Aid within three years. Decl. of Plaintiff's Counsel, Ex. 2. Plaintiff highlights Sgt. Delphine Green's first aid training record, which indicates she received such training in 1999. Id. at Ex. 1. However, this does not establish deliberate indifference by the County defendants because, as plaintiff admits, Sgt. Green "was apparently not on the job at the times in question[.]" Plaintiff's Memo. in Opp., p. 6. Rather, Sgt. Deschenes was on duty and responded to plaintiff's complaints.

Plaintiff also argues that the delay in treatment of his medical condition constituted deliberate indifference. Plaintiff first complained of feeling ill around 3:27 a.m., at which point Sgt. Deschenes immediately took plaintiff's pulse and blood pressure, and called the jail Medical Director for advice. Deschenes Decl., ¶ 3-4. Plaintiff was thereafter watched closely for signs of greater illness. Id. at ¶ 5.

At 4:25 a.m., when Deschenes determined the situation required greater medical attention, plaintiff was immediately transported to the hospital. Id. at ¶ 6. Within 50 minutes,

plaintiff was in the hospital and had been assessed by hospital staff. It took approximately 90 minutes from the initial complaint until plaintiff was transported to the hospital, and less than six hours passed before surgery was completed. No reasonable trier of fact could find that the County defendants acted with deliberate indifference to plaintiff's medical needs upon these facts.[2]

Further, a "mere delay of surgery" does not support a claim of deliberate indifference "unless the denial was harmful." Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Plaintiff presents no evidence that he was harmed by the delay or that Sgt. Deschenes or any jail official purposely acted or failed to act in a way that caused harm to plaintiff. See McGuckin, 974 F.2d at 1060.

Even accepting all inferences in plaintiff's favor, the record falls far short of supporting his claim that the County defendants acted with deliberate indifference to his serious

---

[2]Plaintiff alleges he first complained of vomiting and abdominal pain at approximately midnight, rather than 3:27 a.m., and that he arrived at the hospital "at least six hours later." Plaintiff does not support his allegations with documentary evidence or otherwise provide a factual basis to explain his time estimate. Regardless, I find that the time difference does not change my analysis. Acceptance of plaintiff's six-hour time lapse does not establish deliberate indifference given defendants' actions.

medical needs. Plaintiff's second and fourth claims therefore fail on summary judgment.[3]

B.  First Amendment Retaliation Claim

Plaintiff also alleges that the County defendants denied him appropriate medical care in retaliation for complaining that he was ill.

Within the context of a jail or prison, a viable First Amendment claim must include: (1) an assertion that a state actor took some adverse action against the plaintiff because of plaintiff's protected speech; (2) that such adverse action had a chilling effect on plaintiff's exercise of his First Amendment Rights; and (3) that "the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff fails to present any evidence that would lead a reasonable trier of fact to conclude that prison officials interfered with plaintiff's right to free speech or retaliated against him for the exercise of that right. Plaintiff argues only that Sgt. Delphine Green, who was not present the night of

---

[3]Plaintiff also cites 42 U.S.C. § 1985 in his complaint, but fails to provide any factual allegations or legal arguments in support of a conspiracy claim. Plaintiff has therefore failed to present evidence such that a reasonable trier of fact could find that a conspiracy existed, and any § 1985 claim fails to survive summary judgment.

10   - OPINION AND ORDER

plaintiff's abdominal pain, has "no personal knowledge of any details of the events of Plaintiff's distress," and that "Sgt. Deschenes exhibits in his declaration an explicit contempt for prisoners as manipulative." Plaintiff's Memo. in Opp., p. 6. Even taking these allegations as true, plaintiff presents no evidence to support the existence of a retaliatory motive from the County defendants.[4] Plaintiff also produces no evidence that his exercise of free speech was in any way "chilled," or that Deschenes' conduct did not reasonably advance a legitimate correctional goal. Plaintiff's First Amendment claim therefore fails to survive summary judgment.

C.  State Law Claims

Plaintiff's remaining claims allege violations under the Oregon Constitution and negligence under state law. I exercise my discretion to accept supplemental jurisdiction over these claims. See 28 U.S.C. § 1367.

A district court has discretion to retain jurisdiction even if only state-law claims remain after resolution of the federal question. Osborn v. Haley, 549 U.S. 225, 245 (2007); see also Carnegie-Melon Univ. v. Cohill, 484 U.S. 343, 350-51 (1988) (when federal character of removed case is eliminated while the case is

---

[4] To the extent plaintiff intends this claim to apply to the hospital and Dr. Farooq, he fails to present any evidence that those defendants engaged in any retaliatory conduct as a result of plaintiff's protected speech.

11   - OPINION AND ORDER

*sub judice*, court has discretion to retain jurisdiction, to remand, or to dismiss); Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966) (pendent jurisdiction may be exercised when federal and state claims have a "common nucleus of operative fact" and would "ordinarily be expected to [be tried] all in one judicial proceeding"). Thus, considerations of judicial economy make it reasonable and proper to retain jurisdiction in this case where plaintiff's state-law claims arise out of the same incident. See Gibbs, 383 U.S. at 726.

1. State Constitutional Claim

Plaintiff's third claim alleges a due process violation under Article I, section 10 of the Oregon Constitution, and cruel and unusual punishment as prohibited by Article I, sections 13 and 16 of the Oregon Constitution. The basis of these claims is that defendants' failure to provide for timely and adequate medical care constituted a wanton infliction of pain without penological purpose, constituting deliberate indifference to plaintiff's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

"[T]he Eighth Amendment's 'deliberate indifference to serious medical needs' standard is the appropriate standard under Article I, section 16." Billings v. Gates, 323 Or. 167, 180, 916 P.2d 291 (1996). "Article I, section 16, closely parallels the

12 - OPINION AND ORDER

Eighth Amendment." Id. at 173. As with the Eighth Amendment, "the phrase 'cruel and unusual punishments' . . . connotes a conscious choice on the part of prison officials to inflict punishment on an inmate." Id. at 176.

Because I find that defendants did not act with "deliberate indifference" to plaintiff's serious medical need, plaintiff's state constitutional claims fail based on the same reasoning as his federal claims.

2. Negligence Claims

Plaintiff's remaining claims allege professional negligence by Dr. Farooq and negligent hiring and supervision by the Hospital.

Plaintiff's claim for professional negligence is actually a medical malpractice claim. To succeed on such a claim, plaintiff must show "(1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) causation, i.e., a causal link between the breach of duty and the harm." Stevens v. Bispham, 316 Or. 221, 227 851 P.2d 556 (1993) (emphasis omitted). "In a medical malpractice action, a defendant doctor may offer his own medical expert opinion in an affidavit as evidence to support a summary judgment motion on the issue of the applicable standard of care." O'Gara v. Ptacek, 96 Or.App. 39, 43, 771 P.2d

13   - OPINION AND ORDER

642 (1989) (citing <u>Tiedemann v. Radiation Therapy Consultants</u>, 299 Or. 238, 701 P.2d 440 (1985)).

Dr. Farooq submitted expert testimony that the care plaintiff received did not fall below the accepted standard of care in the medical community. Farooq. Decl., ¶ 8. Plaintiff did not respond with any evidence or expert testimony to rebut Dr. Farooq's assertion. Consequently, the Hospital's evidence is uncontested, leaving no material fact for trial. Plaintiff has therefore failed to meet his burden to survive summary judgment as a matter of law. <u>Celotex Corp.</u>, 477 U.S. at 324 (If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial).

Plaintiff's seventh and final claim alleges that the Hospital and the County were negligent in the hiring and supervision of Dr. Farooq. Once again, plaintiff fails to present any evidence supporting his claim.

The County defendants argue that they did not hire Dr. Farooq or have any supervisory authority over him. They also argue that they had no knowledge or reason to know that Dr. Farooq would engage in negligent conduct. Plaintiff does not dispute this.

14  - OPINION AND ORDER

Plaintiff also fails to present opposing evidence to the Hospital's argument that it was not negligent in hiring or supervising Dr. Farooq. Consequently, plaintiff has not met his burden to show an issue of material fact for trial, and summary judgment is appropriate. See Fed. R. Civ. P. 56(e)(2) ("If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.").

## CONCLUSION

For the reasons set forth above, defendants' Motions for Summary Judgment (docs. 15 and 22) are GRANTED, and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 21ST day of December, 2009.

                            /s/ Ann Aiken
                            Ann Aiken
                        Chief United States District Judge